# County of Chester *versus* Barber et al.

1. County commissioners, when collecting claims due the county, have a right to employ counsel and to agree with them for reasonable compensation. But they have no power to bind the county by a contract to pay said counsel an unreasonably large contingent fee.

2. Whether such an agreement is champertous or not, or whether the English statutes against champerty are in force in this state, not decided.

3. A contract between attorney and client for a contingent fee, is not necessarily invalid. All that the law will do in such case is to scrutinize the transaction and see that it is fair, and that no unfair advantage has been taken either of the necessities or the ignorance of the client.

March 22d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Delaware county:* Of January Term 1881, No. 39.

This was an action of debt on a scaled instrument, brought by William E. Barber, Joseph Hemphill and James W. M. Newlin against the county of Chester, to recover a contingent fee of fifty

[County of Chester *v.* Barber.]

per cent. on the sum of $21,398.34, being a rebate secured to Chester county from the state of Pennsylvania for taxes illegally charged to the county by the state revenue board, and paid into the state treasury.   Suit was originally brought in Chester county, and a change of venue to Delaware county was awarded on motion of the plaintiffs.   The *narr.* declared specially on the following agreement:—

"Memorandum of an agreement, made this — day of March, A. D. 1877, between John Irey, David Ramsey and John McWilliams, commissioners of the county of Chester, in the state of Pennsylvania, of the first part, and William E. Barber and Joseph Hemphill, Esqs., of West Chester, in the county aforesaid, and James W. M. Newlin, Esq., of the city of Philadelphia, of the second part.

"Said commissioners having retained the parties of the second part to represent Chester county upon an application, and for the proceedings to secure a rebate to said county, for the amount of taxes added by the state revenue board, for the years 1875, 1876 and 1877, to the return of said county: It is hereby understood and agreed by the parties hereto, that the parties of the second part shall be paid a sum equal to fifty per centum of the amount which shall be finally adjudged to have been illegally charged to the said county of Chester as aforesaid, and in the event of the said suit being decided against the said county of Chester, then the parties of the second part are to make no charge for their services, and are further to relieve the parties of the first part from all costs and expenses in the premises.

"Witness our hands and seals, the day and year first above written.

"Witness:

J. G. Moses, to signatures of Commissioners.

S. J. Willauer, to signatures of Barber & Hemphill.

C. Leslie Reilly, to signature of James W. M. Newlin.

JOHN IREY.                [L. S.]
DAVID RAMSEY.             [L. S.]
JOHN McWILLIAMS.         [L. S.]
W. E. BARBER.             [L. S.]
JOS. HEMPHILL.           [L. S.]
JAMES W. M. NEWLIN.     [L. S.]

"Attest:
        J. F. HILL, Clerk."

The plaintiffs proved that, in pursuance of the above contract, they had taken proceedings, inter alia, by application and appeal to the auditor-general, state treasurer and attorney-general, and to the Court of Common Pleas of Dauphin county, from the settlement made by the Board of Revenue Commissioners against the county of Chester for the years 1875, 1876 and 1877, the result of which was that it was finally determined that taxes had been

[County of Chester *v.* Barber.]

illegally added to the return of the county by the state revenue board for those years; and a credit settlement was thereupon made between the state and Chester county, by which the latter received a credit of $21,398.34.

David Ramsey, one of the county commissioners, testified as follows: Q. When did you first know or see of the matter contained in that agreement? (Objected to.) A. I can't remember dates; it was some time before there was any article. Q. From whom? A. Mr. Barber. Q. Where did you get the information? A. From our counsel. Q. Who was he? A. Mr. Barber. Q. What was said by him the first time it was mentioned before the agreement was written? A. He made the proposition, as near as I can remember, what he and Mr. Hemphill and Mr. Newlin would do, and how they had agreed with other counties. Q. In order to test the matter? A. Yes; they said it should not cost the county anything, and if they gained it, they would get their percentage. Q. How much? A. Fifty per cent. Q. Anything else? A. The understanding was that as the county got credit, and was credited with the money, they were to get their fee. Q. If the county got credit for the money they would get their fee? A. Yes.

John McWilliams, another of the commissioners, testified: Q. What did you know about the matter contained in that agreement when you executed it? A. I knew they made this proposition to undertake to get a rebate. Q. Who made these representations to you and came to you to sign the paper? A. Mr. Barber came to us and asked us to sign the paper. Q. Was Mr. Barber your counsel? A. Yes. Q. Had you any other? A. No other at that time. Q. Did Mr. Barber advise you to sign that paper? A. He advised us to go into it, I think, and said that it was for the benefit of the county. Q. State whether or not you went into that agreement, and signed that paper, on the advice of Mr. Barber? A. I think the probability is we would not have signed it without his advice; he advised us to go into it as it was for the benefit of the county. Q. Did you have the explanation of any one else? A. Mr. Hemphill. Q. Any one else? A. I don't know as we had; they said other counties had gone into this. Q. Did Mr. Barber say who represented the other counties? A. He said Mr. Newlin had a number of them. Q. Did he state the amount they paid as fees? A. I don't know that; I am not sure. Q. How came you to fix on the fifty per cent.? A. I was under the impression that was the proposition they made themselves. * * * Q. Did you stipulate for any terms in that agreement? A. I don't know that we did particularly. Q. Do you remember how it got into the agreement that these gentlemen were to save the county harmless, that is, in case they failed? A. My recollection of that is that that was a proposition of their own.

[County of Chester *v.* Barber.]

The defendant presented the following points:

1. The alleged contract between the plaintiffs and defendant, put in evidence in this case, providing that they should receive one-half part of the results of their efforts, is against the policy of the law, and is incapable of enforcement by action. The jury is therefore instructed to disregard it. Ans. " The contract, if fair and free from fraud, is not against the policy of the law, and, if the plaintiffs have faithfully performed their part, the defendant must keep the other part."

2. There is no evidence in this cause which entitles the plaintiffs to anything more than a just and reasonable compensation for the professional services rendered by them to the defendant. Ans. " The plaintiffs are entitled to a verdict for the sum stipulated to be paid by the written agreement, provided the jury find that there was no fraud, false representation, or overreaching on the part of the plaintiffs in the making of the agreement. If the jury find that the agreement was fairly made, and that it is free from any taint of fraud, then the '*just and reasonable sum*' to which the plaintiffs are entitled, is the amount named in the agreement, with interest thereon."

3. Inasmuch as Mr. Barber, one of the plaintiffs, was at the time of the making of the alleged contract, counsel for the defendant, and this fact was within the knowledge of the other plaintiffs, no recovery can be had upon the contract in question. Ans. " If the jury find that Mr. Barber actually took advantage of the commissioners, and caused them by reason of his influence with them as their counsel, to enter into an unreasonable agreement, and that the agreement would not have been signed except through his counsel and advice, for his own benefit, then the plaintiff cannot recover."

4. Inasmuch as Mr. Barber, one of the plaintiffs, was at the time of the making of the alleged contract, counsel for the defendant, he cannot recover in the present action. Ans. " To this point I give the same answer as that given to the third point."

5. As this is a joint action, and as Mr. Barber is not entitled to recover, the verdict must be for the defendant. Ans. " I do not say that Mr. Barber is not entitled to recover; as before stated, unless the jury find some fraud, false representation or undue advantage on his part, he is entitled to recover the sum agreed upon. But if the jury should find that he is not entitled because of fraud or deception practiced by him, or because he has improperly exerted his influence as attorney for the commissioners, then the other plaintiffs cannot recover, as they would be bound by his acts. I say to the jury that the salary of $150 a year, paid to Mr. Barber did not include his compensation for the services here claimed."

6. The Commissioners of Chester county had no lawful authority

[County of Chester *v.* Barber.]

to contract with the plaintiffs, that the county would pay them one-half part of any abatement which they might secure, upon any claim made by the Commonwealth against said county, and the alleged contract was therefore not binding upon the defendant. Ans. " If the commissioners were not deceived, defrauded or improperly influenced, they had the right to make the contract, it apparently being for the benefit of the county."

7. The seal of the county to the alleged contract having been affixed after the same was signed, and the seal having been so affixed without the order of the county commissioners, and after the instrument was signed, the instrument of writing on which suit is brought is void. This being an action of debt against the county on the said sealed instrument, the action cannot be sustained, and the verdict must be for the defendant. Ans. " There is not sufficient evidence to warrant the court in charging you that the agreement was not properly sealed. The weight of the evidence is that the forms of law were complied with, especially as the agreement read in evidence has been produced properly signed and sealed by the defendant, and comes directly from the custody of the county officers."

Verdict and judgment for the plaintiffs for $11,540.16. The defendant took this writ of error, assigning for error the answers to the defendant's points as above.

[The evidence from which the above extracts are taken was printed in an appendix to the paper books of both the plaintiff in error and defendant in error. The defendants in error, however, in their paper book, protested that none of the evidence was properly before this court, because it was not contained in the bill of exceptions which was not settled and sealed by the judge who tried the cause until more than six months after the trial, and then against the protest of the defendants in error.]

*Wayne MacVeagh* (with whom was *H. T. Fairlamb*), for the plaintiff in error.—As to the state of the record. The declaration sets out the agreement *in hæc verba*. The points presented by us, with the answers thereto, and the full charge of the judge as excepted to were filed of record, and they have been assigned for error. This is expressly authorized by the Act of March 24th 1877, Purd. Dig. 2153, pl. 4, 5. So that even if the testimony be rejected, the questions raised in the court below are properly here on their merits for review.

Can attorneys at law, one of whom is the general counsel of a public body, bargain with the officials of such public body by entering into a speculative contract for the joint recovery in equal shares of public moneys, at the sole cost of the attorneys in case of failure to recover ? Can county commissioners make such a bargain ? Here was a sum of over $20,000 in the state treasury,

[County of Chester *v.* Barber.]

which belonged either there or in the treasury of Chester county. It appears that the county was ignorant of any right to claim it. These lawyers suggested the claim ; offered to contest it; to protect the county from costs; and, to divide the profits equally. This is champerty, pure and simple.   We do not ask this court to adhere to the strictness of the English law on the subject of contingent fees, but we do insist that an equal partnership between attorneys and municipal corporations in speculative litigation is unlawful in Pennsylvania.   It is against the policy of the law, and against the traditions in Pennsylvania, that lawyers are at liberty to seek clients, and in conjunction with their standing counsel make a purchase, in consideration of professional services, of the clients' right to sue, by entering into a written contract for the equal division of possible gains from speculative litigation to be conducted at the attorney's expense.   This is not the case of a reasonable contingent fee stipulated for by a client who has rights, but has no means to pursue them.   Contingent fees, within a limit where they are compensation and not partnership, are allowed in Pennsylvania as against third persons, but lawyers may not be at once counsellors and part owners in the subject of litigation. Parties may be heard in their own cause, and when lawyers plead their own cause the court should know that they speak as litigants, and not as counsel for clients who have disappeared as principals. Especially is it contrary to the policy of the law, that such a bargain should be enforceable when made with public commissioners, trustees, who have, in violation of their trust, bargained away public moneys.   In the words of Sir SAMUEL ROMILLY, "Whatever enables a lawyer to take advantage of his client, thereby disables him from so doing."

*David W. Sellers* and *W. B. Waddell*, for the defendants in error.—The record, as brought into this court, presents nothing for review.   The testimony, including the contract in suit, is not a part of the bill of exceptions, and the bill was not presented to the judge and settled in accordance with the rules of the court below, nor until more than six months after the trial.   It was then sealed against our protest.   The rules in regard to the settlement of bills of exceptions are for the benefit of defendants in error, and cannot be disregarded against their protest: Kirkpatrick *v.* Kirkpatrick, 13 Wright 122.

As to the merits.   No fraud, false representation or deception in making the agreement was shown, and the jury have found there was none.   The contract was within the power of the county commissioners to make.   The commissioners are the representatives of the county, and it is through them that its corporate powers are exercised.   They manage its financial affairs and make all contracts respecting its property and its interests.   Their powers and

[County of Chester *v.* Barber.]

duties are not limited by statute, but in the exercise of these powers and performance of these duties they have a wide latitude of discretion. Whatever, therefore, in the exercise of their discretion, would seem to be necessary for the financial welfare of the county they have full power and authority to do in its behalf, and whatever an individual could lawfully do touching his own business, the county commissioners could lawfully do touching the business of the county : Cooper & Grove *v.* Lampeter Township, 8 Watts 125 ; Vankirk *v.* Clark & Graham, 16 S. & R. 286 ; Schuylkill and Dauphin Improvement Co. *v.* McCreary, 8 P. F. Smith 304 ; Hunter *v.* Albright, 5 W. & S. 423 ; Hamilton *v.* Lycoming Mutual Ins. Co., 5 Barr 339 ; Schwamble *v.* Sheriff, 10 Harris 18 ; County of Allegheny *v.* Western Pennsylvania Hospital, 12 Wright 123 ; Jefferson County *v.* Slagle, 16 P. F. Smith 202. The commissioners having power to make the contract, and having a knowledge of all the circumstances of the case, were the judges whether the contract was for the interest of the county, and whether the compensation to the attorneys was inordinate. The commissioners having acted according to their discretion, in the absence of fraud, the county cannot now avoid their contract by alleging that the compensation was excessive. At the time the contract was entered into recovery seemed hopeless, and fifty per cent. was not unreasonable. A similar percentage was allowed in Strohecker *v.* Hoffman, 7 Harris 227, wherein WOODWARD, J., in delivering the opinion of the court said : "Agreements fairly made between counsel and clients are as obligatory as between other parties ; and when a desperate claim has been successfully asserted by counsel, on the faith of an agreement that one-half of the recovery shall reward his skill and diligence, it is an ungracious plea to urge that the agreement was without consideration and void." See also, McFarland's Estate, 4 Barr 149 ; Porter *v.* Parmly, 39 N. Y. (Superior Court) 219 ; Haight *v.* Moore, 37 Id. 161 ; Ex parte Plitt, 2 Wallace, Jr., 453 ; Trist *v.* Child, 21 Wallace 441 ; Wylie *v.* Coxe, 15 Howard 415 ; Wright *v.* Tebbitts, 1 Otto 252 ; Stanton et al. *v.* Embrey, Adm'r, 3 Id. 556, 557 ; McPherson *v.* Cox, 6 Id. 404.

It is contended that Mr. Barber's position as general counsel for the county, precluded him from entering into this contract. It is true that he was the general solicitor of the county, and that he received an annual salary, for counsel and advice, of the small sum of $150. This was not intended to compensate him for services as an advocate or for special service in cases of exceptional difficulty. The jury found that he did not use his influence with the commissioners as their counsel, to overreach them by inducing them to enter into an unreasonable agreement. And in the absence of fraud, there is no reason, in public policy, why a contract to pay him, in connection with other attorneys, an additional compensation for exceptional services, should not be sustained.

[County of Chester *v.* Barber.]

The English statutes against champerty and maintenance are not in force in Pennsylvania. The case of Thallhimer *v.* Blinkerhoff, 15 Am. Decisions 320, is very full as to the law on this subject. The editor says : " In those states, of course, in which the doctrine of maintenance òr champerty has not been adopted, there is nothing contrary to law, morals or public policy in a contract by an attorney to recover land or other property for an interest in it, even though he also agree to pay expenses." Judge ELLIS LEWIS, in his abridgment of the criminal law of the United States, in treating of maintenance, champerty and barratry, says : "In Pennsylvania, the English statutes against maintenance, are not in force. * * * Contingent fees to counsel are of frequent occurrence. Many of the most emienent and upright gentlemen of the bar have felt no repugnance to this method of compensation. It has been practised without the slightest censure by gentlemen who have risen to the highest legislative and judicial stations in the Commonwealth, and who have been distinguished ornaments of the profession." We insist, equally with the eloquent counsel on the other side, on propriety of dealing between attorneys and their clients, but we do not, like him, permit zeal for a high standard of professional ethics, to confuse the distinction between an overreaching or unconscionable bargain and a fair contract, voluntarily made between intelligent men, with full knowledge of all the circumstances.

Mr. Justice PAXSON delivered the opinion of the court May 2d 1881.

This was an action of debt brought in the court below against the county of Chester by three members of the bar, two of whom reside in said county and the other in the city of Philadelphia. The action was founded upon an agreement under seal, properly executed by the three plaintiffs and the three gentlemen who were at the time the commissioners of said county. The seal of the county is affixed and attested by the clerk of said commissioners. The agreement provides that the commissioners have retained the plaintiffs to represent Chester county in proceedings to secure a rebate to the county from the state for the amount of taxes added by the state revenue board for the years 1875, 1876 and 1877, and a return thereof to the county ; that the attorneys should be paid for their services fifty per cent. of the amount which should be recovered or allowed to the county on settlement, and, if unsuccessful, no charge was to be made for services, and the county was to be relieved from all costs and expenses in the premises.

In pursuance of this agreement, the plaintiffs entered upon their employment, and succeeded in obtaining a credit from the state in favor of the county of the sum of $21,398.34. They then brought

[County of Chester *v.* Barber.]

suit upon the said agreement for their fees, and recovered a verdict in the court below for $11,540.16.

It is proper to state that one of the plaintiffs was the regular solicitor of the county commissioners at the time the agreement was made.

The whole case turns upon the single question of the power of the commissioners to bind the county by such an agreement.

The power of counsel to contract with their clients for contingent fees is not necessarily involved, and we shall not therefore discuss the legality or the ethics of such transactions. Nor need we stop to consider whether the agreement as set out in the *narr.* is champertous, nor whether the English statutes in regard to this offence are in force in this state.

We rest our decision upon the broad ground that the commissioners had no power to bind the county by such a contract; that it was against public policy, and therefore null and void. The learning and industry of the plaintiffs have failed to call our attention to any case which sustains such a contract, nor have I been able to find one. Wylie *v.* Coxe, 15 How. 415; Trist *v.* Child, 21 Wall. 441; Wright *v.* Tebbitts, 1 Otto 252; Stanton *v.* Embrey, 3 Id. 556, and McPherson *v.* Cox, 6 Id. 404, are not in point. It is true these cases rule that a contract for a contingent fee in the prosecution of a claim against the government, when fairly made, may be enforced. They are all cases, however, in which the contract was made with a private claimant. That an attorney may make any contract he sees proper with his client in regard to his compensation, where the client is a private citizen, and acting in his own behalf and with reference to his own property, is not denied. All that the law will do in such case is to scrutinize the transaction and see that it is fair and that no unconscionable advantage has been taken either of the necessities or the ignorance of the client.

How stand the facts here? There was a large fund in the treasury of the state, which belonged either to the latter or to the county of Chester. In either event, it was public money, and was not the property of the county commissioners. It was their right and their duty to collect the same, if possible, and place it in the county treasury, or to obtain a proper credit therefor, which is practically the same thing. It was strictly in the line of their duty to employ competent professional assistance for such purpose. Having an experienced attorney as their standing counsel, the necessity of employing two others, one of them out of the county, does not clearly appear. Conceding such necessity, however, to have existed, the commissioners could not bind the county for more than a reasonable compensation. What is a reasonable compensation under such circumstances is perhaps a question for a jury. We will not pass upon it further than to say that a charge of one-half for recovering

[County of Chester *v.* Barber.]

so large a sum in the hands of a solvent debtor cannot be regarded as reasonable upon any principle which should govern professional conduct.

These commissioners were acting in a fiduciary character. They were but trustees of the money, when received, for the use of the county. When therefore they contracted to give one-half of it to the plaintiffs for their services, they exceeded their power. They were giving what did not belong to them. As well might a trustee contract to give away one-half of the trust estate as compensation to counsel for services in connection therewith. And if he may give away one-half, why not three-fourths or even a greater proportion? Can it be doubted that a court of equity would strike down such a contract as improvident and a legal fraud?

We are not unmindful of Cooper *v.* Lampeter Township, 8 Watts 125; Vankirk *v.* Clark, 16 S. & R. 286; Hunter *v.* Albright, 5 W. & S. 423; Schwamble *v.* The Sheriff, 11 Harris 18; County of Allegheny *v.* Western Hospital, 12 Wright 123; Schuylkill & Dauphin Improvement Co. *v.* McCreary, 8 P. F. Smith 304, and cognate cases, in which it is held that county commissioners are clothed with the corporate powers of their respective counties and may contract therefor. This principle is not denied where commissioners act in the line of their duty and within the scope of their powers. They exceed both when they attempt to give away the property of the county.

This ruling does not deny the plaintiffs all compensation. Whether the plaintiff Barber can recover anything will depend upon the terms of his previous engagement as solicitor to the commissioners. The other plaintiffs are entitled to recover a fair compensation, nothing more. But there can be no recovery upon this agreement, for it is clearly *ultra vires*. It is set out in *hæc verba* in the *narr.*, and being thus upon the record, we are enabled to reach the merits of the case, notwithstanding the defective character of the bill of exceptions.

The judgment is reversed, and a *venire facias de novo* awarded.

Justices MERCUR, GORDON and GREEN dissented.