## MULLER v. KELLY.

(Circuit Court of Appeals, Third Circuit. September 24, 1903.)

### No. 8.

**1. ATTORNEY AND CLIENT—VALIDITY OF CONTRACT FOR CONTINGENT FEE— QUESTIONS FOR JURY.**

Plaintiff, a Swiss immigrant, who had been in this country but about a month, and neither spoke nor understood English, was thrown from a street car, and severely and permanently injured. He was taken to a hospital, where he remained unconscious for two or three days, after which for several months he continued in a highly nervous condition, diagnosed as hysteria, of such character and severity that his only acquaintance was forbidden to talk to him, and all communication with him was through a physician who spoke German and by means of writing. His injuries were of such character that after he had been confined in the hospital five months, and after examinations by its own physicians, the traction company paid $10,000 as compensation for his injuries with-

out suit or contest. Some 15 days after the injury, plaintiff, through the agency of the physician, who acted as interpreter, signed a writing by which he employed defendant as his attorney, and agreed to pay him for his services one-half the amount recovered from the company. He did not see defendant, and had never previously heard of him. He afterward received as his share of the recovery some $4,500, and receipted for the same before leaving the hospital. Subsequently he brought suit against defendant to recover the $5,000 retained by the latter. *Held*, that plaintiff was entitled to have submitted to the jury the question whether, under the circumstances shown, there was any contract with defendant, and whether, if so, it was fair and conscionable; the rule of the federal courts as well as the courts of the state being that such contracts will be closely scrutinized, and if extortionate or unconscionable, or if obtained by undue means, will not be upheld.

Dallas, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 116 Fed. 545.

Edward F. Hoffman, for plaintiff in error.
D. Webster Dougherty, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. Jean Muller, the plaintiff in error, a Swiss immigrant, landed at Philadelphia in April, 1900. He spoke no English, had no relatives in this country, and, indeed, no acquaintances, save one Ghaul, with whom he boarded. He found employment at Cramps' Shipyards. On May 18th he was forcibly ejected from a street car while in motion by a conductor and badly injured. He was removed to a hospital in an unconscious condition, and so remained for two or three days. On his return to consciousness he was in a pitiable state. As a result of his injuries he had either become totally deaf or his mental condition was that of hysteria. He was in so highly a nervous condition that he had to be forbidden intercourse. He was communicated with by the doctor writing on slips of paper. His mental condition was then and for some months diagnosed as hysteria. Dr. Boyer, of the hospital staff, thought it was hysteria, and the defendant himself testified that there was such doubt among the physicians as to whether the plaintiff's injuries were real or a case of hysteria that he procured the services of several expert neurologists to ascertain that fact. Probably the most cogent proof of the grave character of his injuries was that after five months confinement in the hospital under treatment, and after examinations of him made by its own physicians, the traction company paid, without suit or contest, the very unusual sum of $10,000 as compensation for the injuries inflicted on him. Mr. Duane, the counsel for that company, characterized it "as the strongest case in favor of the plaintiff as regards damages which has ever been referred to me by the Union Traction Company. It was for that reason I was willing to pay the very unusual sum of ten thousand dollars in settlement." When the plaintiff regained consciousness he was in a highly nervous and hysterical state. When his boarding master Ghaul saw him several days

later, which was near the date of the power of attorney in question, the plaintiff could not talk to him without crying, and his condition was such that the attendant physician had to forbid Ghaul talking with him. Indeed, one witness who visited him so late as September testified that Dr. Kieffer, the hospital surgeon in charge of plaintiff, then had him secrete himself so that he could see the condition of the plaintiff unobserved, and that he saw him moving along leaning his whole weight against the walls. He was wholly dependent for communication with others on Dr. Kieffer, who spoke German, and communicated by writing on slips of paper. The nature of the interpreting services so rendered was testified to by Brodt, a claim adjuster of the traction company, who visited the plaintiff, and conversed with him through the doctor, who suggested that he be paid by the company $25 or $30 for interpreting and keeping counsel from seeing the plaintiff. It was also in evidence there was later deducted from the amount paid by the traction company $150 for his (Kieffer's) services as interpreter. In this state of affairs, some 15 days after the accident, and when, if his testimony is believed, he was unsuccessfully requesting to see the Swiss consul for consultation, the plaintiff, without knowing or even seeing the defendant, is alleged to have made, through the agency of Dr. Kieffer, an agreement with the defendant for a contingent fee, the outcome of which agreement was to allow the latter to charge the sum of $5,000 for alleged services, to pay Dr. Kieffer $150 for services as interpreter, to pay physicians for examining the plaintiff to qualify themselves to testify as to his mental and physical condition $255, and to leave the plaintiff, after deducting $66.25 for witness and court costs, the sum of $4,528.75 as his share of the $10,000 paid by the traction company to the defendant as compensation for Muller's injuries. The evidence indicates that the plaintiff is permanently disabled, and that upon the sum paid by the traction company depends his future livelihood. After leaving the hospital and procuring counsel through the intervention of the Swiss consul, Muller brought suit against the defendant, his former attorney, to recover the balance; but at the close of the testimony the case was taken from the jury and binding instructions given against him, the court holding, in effect, that the plaintiff was concluded by the written agreement to pay the contingent fee, and by his written receipt for the balance paid him just before he left the hospital. The refusal of the court to submit the case to the jury is here assigned for error.

After careful consideration, we are of opinion the assignment should be sustained. The agreement was not only between counsel and client; it was for an unusual and very large amount; it was made without the parties meeting; it was arbitrarily fixed by counsel, without knowing the extent of the plaintiff's injuries, without information from him as to the circumstances or facts of the case; it was made by the client without any information of the character, standing, ability, or reliability of the counsel, under the statement of the doctor, in whom he would naturally have all faith, that he would have to pay such fees to any American lawyer; it was made, if the plaintiff's testimony was believed, under the belief that he was engaging another lawyer, who had been recommended by Ghaul; and not only was it

made by one ignorant of our language and procedure, but it was made with a sick and shattered man, suffering from the effects of a most serious accident, and of whose mental balance and capacity there was, to say the least, grave question. Under such circumstances, we think the question was not one of changing a written contract, but whether, under the circumstances, there was any contract between them. The counsel admitted receiving the money. He sought to defend against payment of the unpaid balance by showing a contract for this large sum, made under the circumstances recited, with his client. In view of the attendant facts and circumstances of this case, we think the plaintiff had, under the authorities, a right to have that question determined by a jury. Now, in this case, we discard for present purposes all questions of ethics and the grave temptations to professional misconduct agreements, such as the present are prone to foster, and assume the right of counsel, under proper conditions, to make such bargains. But conceding the right to so contract, as was done in Taylor v. Bemiss, 110 U. S. 45, 3 Sup. Ct. 441, 28 L. Ed. 64: "This, however," as was there said by Mr. Justice Miller, "does not remove the suspicion which naturally attaches to such contracts; and where it can be shown that they are obtained from the suitor by any undue influence of the attorney over the client, or of any fraud or imposition, or that the compensation is clearly excessive, so as to amount to extortion, the court will in a proper case protect the party aggrieved." In Pennsylvania the rule is the same. In Shoemaker v. Stiles, 102 Pa. 553, it was said: "The parties were attorney and client. The relation gave rise to great confidence, and the attorney is presumed to have the power to strongly influence his client, and to gain by his good nature and credulity, and to obtain undue advantages and gratuities. Hence the law often declares transactions between them void which between other persons would be unobjectionable. Unless the transaction was fair and conscionable, it is deemed a constructive fraud." And in Chester v. Barber, 97 Pa. 463: "That an attorney may make any contract he sees proper with his client in regard to his compensation, and acting in his own behalf, and with reference to his own property, is not denied. All that the law will do in such a case is to scrutinize the transaction, and see that it is fair, and that no unconscionable advantage has been taken either of the necessities or the ignorance of the client." The general consensus of opinion is summarized in 5 Am. & Eng. Ency. Law (2d Ed.) p. 828: "It may be stated as a well-grounded rule that a contract for a contingent fee must be made in good faith, uberrima fides, without suppression or reserve of fact, or apprehended difficulties, or undue influence of any sort or degree; and the compensation bargained for must be absolutely just and fair, so that the transaction is characterized throughout by all good faith to the client." Indeed, in the case of Herman v. Metropolitan Street Ry. Co. (C. C.) 121 Fed. 184, where an attorney claimed 50 per cent. for the recovery of $500 in an accident case, under an agreement for a contingent fee, Judge Lacombe went to the length of saying that a fee of such proportion was in itself in that case unconscionable. He there said: "The court is not satisfied that such a contract was made, but, if it were, it was so utterly

unconscionable as to be void. Matter of Fitzsimons (Sup., First Dept., Dec., 1902) 79 N. Y. Supp. 194. The action was to recover damages for injuries resulting from an ordinary street accident—a collision between a car and a truck. To constrain or persuade a client into an agreement to give half the recovery, and to pay all the disbursements, for preparing and trying such a case, is an abuse of confidence, which, in the language of the cases cited, it would not be in the interest of public policy or professional ethics to approve." Under these circumstances, and in view of the facts and circumstances of this case, and the testimony that the fee charged was far in excess of the value of the services rendered, we think the plaintiff was entitled to have the jury pass upon his mental capacity at the time to enter into an agreement of this character, and to "scrutinize the transaction, and see that it was fair, and that no unconscionable advantage has been taken either of the necessities or the ignorance of the client" (Chester v. Barber, supra); to ascertain whether the transaction was fair and conscionable (Shoemaker v. Stiles, supra); and, if the compensation was so clearly excessive as to amount to extortion, to protect the party aggrieved thereby (Taylor v. Bemiss, supra). The plaintiff having been deprived of his constitutional right to a jury trial, the case will be reversed, and a venire de novo awarded.

DALLAS, Circuit Judge (dissenting). A contract for a contingent fee is valid. Wylie v. Coxe, 15 How. 415, 14 L. Ed. 753; Wright v. Tebbitts, 91 U. S. 252, 23 L. Ed. 320; Stanton v. Embrey, 93 U. S. 548, 23 L. Ed. 983; McPherson v. Cox, 96 U. S. 404, 24 L. Ed. 746; Taylor v. Bemiss, 110 U. S. 42, 3 Sup. Ct. 441, 28 L. Ed. 64. Where a party to such a contract alleges that he lacked contractual capacity when he made it, the burden of sustaining that allegation rests upon him, precisely as it would with respect to any other contract. Therefore I cannot agree that the trial court should have permitted the jury to set aside the written contract which was admittedly made in this case, upon evidence that the plaintiff below was nervous and hysterical, but without any proof that he was incapable of comprehending what he was doing, and in the face of testimony which, as I think, clearly shows that he was not.

I do agree that it is the duty of the courts to scrutinize such transactions, and I may be permitted to add that, in my judgment, this duty should be rigorously discharged. If it be found that the attorney has exercised undue influence over the client, has been guilty of fraud, imposition, or extortion, or has in any manner abused the confidence which pertains to the relation of attorney and client, the party aggrieved ought to be, and in a proper case will be, protected. But, as I read it, this record discloses no testimony that the attorney against whom this suit was brought did any of these things. Therefore I think the learned judge was right in directing a verdict for the defendant, and that the judgment which was entered should be affirmed.