## BOARD OF ED. OF OKLAHOMA CITY v. THURMAN.

No. 16423—Opinion Filed Jan. 19, 1926.

Rehearing Denied July 6, 1926.

(Syllabus.)

**1. Attorney and Client—Contingent Fees— Reasonableness for Defense.**

A contract between attorney and client will not be held unconscionable and void because the contingent attorney's fee therein provided is 25 per cent. of the amount saved by defense of an action.

**2. Same—"Unconscionable Contract."**

To be unconscionable, it must be such as no man in his senses and not under a delusion would make, on one hand, and no honest and fair man would accept, on the other.

**3. Same—Requisites of Valid Contract.**

A contract between attorney and client upon a contingent basis, to be binding, must be made in good faith without suppression or reserve of fact and without undue influence, and the compensation bargained for must be just and fair.

**4. Same—Question of Fact.**

The question whether the contract between attorney and client which gives to the attorney for defending actions 25 per cent. of the money saved, is unconscionable, is one of fact depending upon the character of the actions and the amount of services to be rendered in defending such actions.

**5. Same—Absence of Evidence of Unreasonableness.**

In the absence of testimony to the effect that an attorney's fee is unreasonable or excessive, the court is without power or authority to determine that an attorney's fee expressed in a contract is so excessive as to be unconscionable.

**6. Counties—Defense of Tax Suits—Duty of County Attorney.**

Under section 5741, Comp. Stat. 1921, a county attorney is solely responsible for the county's legal business, and it is his duty to defend in tax suits brought against the county treasurer of his county involving county funds.

**7. Schools and School Districts—Implied Power to Employ Attorney.**

A school board has implied power to employ an attorney only in a proper case.

**8. Same—Invalidity of Contract to Assist County Attorney in Tax Suit.**

Where the law makes it the duty of the county attorney to defend a tax suit brought against a county fund, a contract between a school board and an attorney providing for the attorney's assistance to the county attorney in defense of such an action is to that extent ultra vires and void.

**9. Lis Pendens—Notice to Parties and Privies.**

The pendency of a suit is sufficient notice of the matters involved in such suit to the parties to the litigation and those who claim under them.

**10. Taxation—Taxes Paid Under Protest— Duty of Treasurer to Hold Money Intact.**

When taxes are paid under protest to the county treasurer, it is the ministerial duty of the county treasurer to hold intact the tax money so paid.

**11. Judgment Sustained as Modified.**

Record examined, and held, sufficient to sustain judgment as modified.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by H. C. Thurman against the Board of Education of Oklahoma City. Judgment for plaintiff, and defendant brings error. Affirmed as modified.

Hayson & Lukenbill, for plaintiff in error.

Ross & Thurman, for defendant in error.

PER CURIAM. The defendant in error commenced this action on a written contract in the district court of Oklahoma county to

recover from the plaintiff in error a balance alleged to be due under the terms of the contract. The contract provides for the employment of the defendant in error as attorney for the school board to assist the county attorney of Oklahoma county and the municipal counsellor of Oklahoma City in handling 619 tax suits filed in 1923, by various taxpayers against M. S. Ryan, county treasurer of Oklahoma county.

The contract provides compensation to the attorney upon a contingent basis of "25 per cent. of the difference between the amount of the school district taxes paid under protest and the amount thereof which the tax payers by final judgment succeed in recovering, it being the understanding of the parties that the party of the second part is to receive as his full compensation 25 per cent. of the amount of school taxes involved in said suit which by defense of said actions is saved to the school district."

The plaintiff in error, on May 31, 1924, paid on the contract the sum of $10,352.30, upon the final determination of 544 of the 619 suits, and thereafter the defendant filed claim for $19,778.38, covering the 75 suits remaining when finally determined, and began the instant action on July, 1924, to recover the said amount.

For sometime prior to the date of the contract mentioned, defendant in error had been acting in the capacity of attorney and counsellor for the said school board under a monthly salary of $50 for counsellor fees and a precedent of extra pay for extra legal services.

The instant action was tried to the court and jury, and after the introduction of evidence the defendant in error moved the court to direct the verdict. The court sustained the motion, and judgment was accordingly rendered in the sum of $19,718.38, with interest at six per cent. per annum from June 2, 1924, in favor of defendant in error and against plaintiff in error.

To reverse the judgment it is urged that the question whether a contract between attorney and client which gives the attorney, for the defense of an action, a certain per cent. of the amount saved, is unconscionable, is one of fact depending upon the character of the action, the particular relationship of the parties, the amount of services to be rendered, and the circumstances surrounding the transaction.

The answer of the school board alleges the confidential relation of attorney and client to have been existing between the parties at the time of the contract and an advantage

thereby taken by the attorney in the procurement of the contract, by reason of which the instrument is alleged to be unconscionable, unenforceable, and void. The contract in question was introduced in evidence, yet no evidence was had relating to what was a reasonable attorney's fee under the circumstances.

According to the common law of England, an agreement between an attorney and client on a fee contingent upon the success of the litigation is champertous. Hilton v. Woods, L. R. 4 Eq. 432. The common-law rule has found favor with the courts of the United States in some cases. Holloway v. Lowe, 7 Port. 488 (Ala.). But, under section 4101, Compiled Oklahoma Statutes, 1921, an attorney may enter into a contract with his client for a contingent fee not to exceed 50 per cent. of the amount of recovery. So this contract will not be held void merely because the contingent attorney's fee is 25 per cent., nor any other per cent. less than the statutory limitation. It may be held void, if it is an unconscionable contract, even though the amount specified is less than the statutory limitation, for such a contract partakes of fraud. To be unconscionable, it must be such as no man in his senses and not under a delusion would make, on the one hand, and as no honest and fair man would accept, on the other. Wenninger v. Mitchell, 139 Mo. App. 420, 122 S. W. 1130; Ball v. Reyburn, 136 Mo. App. 546, 118 S. W. 524.

As we have heretofore recited, no evidence was offered as to what would have been a reasonable attorney's fee under the existing circumstances, and can we now say that the amount of fee contracted for, to wit, 25 per cent., standing alone and unexplained, would be sufficient to show an unfair advantage taken of the client, and that thereby constructive fraud was perpetrated on the school board?

There was no evidence of actual fraud, such as false statements or concealment of facts between the attorney and the board, and, in fact, the attorney offered to contract his services for a fixed fee of ten per cent. of the school money involved in the actions, but the school board elected to enter the contract upon a 25 per cent. contingent basis.

The relation of attorney and client has always been regarded as one of special trust and confidence requiring that all dealings between them shall be characterized by the utmost fairness and good faith, and so strict is the rule that such transactions are held, as against the attorney, to be prima facie

fraudulent. Cooley v. Miller, 156 Cal. 510, 105 Pac. 981.

To be binding, such a contract for a contingent fee must be made in good faith, without supression or reserve of facts and without undue influence, and the compensation bargained for must be just and fair. If the fee is so excessive in proportion to the services rendered as to be in fact oppressive to the extent of extortion, the contract will not be upheld. But, in the absence of both proof of actual fraud and proof of an excessive fee charged, and in view of much evidence on the part of the attorney relative to his good faith and fairnesss in his dealings with his client, which removes the prima facie presumption of fraud, and the judgment of the learned trial judge, we say the contract in the instant case is not unconscionable, however improvident as to the interest of the schools of Oklahoma City.

The case of Morehouse v. Brooklyn Hts. R. R. Co., 185 N. Y. 520, 7 Ann. Cas. 377, is cited by counsel to the effect that:

"The question whether the contract between attorney and client, which gives to the attorney for prosecution of a claim one half of the recovery is unconscionable, is one of fact depending upon the character of the claim and the amount of services to be rendered in prosecuting it to judgment."

We agree thoroughly with the case, but in the text thereof it is said:

"The defense interposed by the railroad company was that the contract * * * was unconscionable, and, therefore, illegal and void."

And again:

"And that evidence was produced upon the trial bearing upon this defense."

In the case before us, by the instructed verdict and the refusal of instruction No. 1, the trial court held that there was no evidence that the compensation agreed upon was excessive, and for that reason there was no issue of fact in this regard to be determined by the jury.

Counsel cites Muller v. Kelley, 125 Fed. 212, but in that case there was much evidence concerning the reasonableness of the fee charged, and it is said:

"Under these circumstances * * * and the testimony that the fee charged was far in excess of the value of the services rendered, we think the plaintiff was entitled to have the jury pass upon his mental capacity * * * and to scrutinize the transaction, and see that it was fair and that no unconscionable advantage had been taken either of the necessities or the ignorance of the client." Citing Shumaker v. Stiles, 102 Pa. 553, and

Taylor v. Bemiss, 110 U. S. 45, likewise cited by counsel.

It has long been the rule of this court that a finding and judgment cannot be made with regard to a reasonable attorney's fee without the introduction of testimony in respect thereto. Holland Banking Co. v. Dix, 67 Okla. 228, 170 Pac. 253; Holmes v. Kress & Company et al., 100 Okla. 131, 223 Pac. 615; Oklahoma Pipe Line Co. v. Hoefer. Adm'r, 100 Okla. 233, 229 Pac. 440; Getman v. Hayhow, 103 Okla. 161, 229 Pac. 559; Holiday Oil Co. et al. v. Smith et al., 100 Okla. 172, 228 Pac. 775.

We conclude in the issue thus presented by the case at bar, in the absence of testimony to the effect that such attorney's fee was excessive or unreasonable, that the court was without power or authority to determine that the attorney's fee expressed in the contract was so excessive as to be unconscionable. The action of the trial court meets with the views herein expressed, so far as the validity of the contract is concerned in this respect.

It is next contended that the plaintiff in error had no power or authority to contract with the defendant in error to pay out funds of the Oklahoma City school district to him for assisting in the collection of taxes belonging to the separate school fund.

It was alleged and proved by the plaintiff in error that the defendant in error in collecting the $10,352.30, paid to him by the school board on May 31, 1924, on the contract, represented that he had saved to the school district $41,409.20, when in fact there was included in said sum the amount of $17,241.31 in funds belonging to the separate school fund, 25 per cent., or $4,310.32, of which plaintiff in error claimed was an overpayment which should be deducted from the amount, if any, found to be due the attorney.

The plaintiff in error submitted a requested instruction upon this theory of defense, and the same was by the court refused.

Section 10574, Compiled Oklahoma Statutes, 1921, reads as follows:

"In all cases where county separate schools for white and colored children are maintained, the county excise board shall annually levy a tax roll on all taxable property in their respective counties, sufficient to maintain such separate schools as are hereinafter provided. Upon estimate made by the county commissioners, said taxes shall be estimated, published, levied and collected, in the same manner as other taxes for county purposes; provided, however, that in all independent districts where separate schools for white and colored children are

maintained, it shall be the duty of the board of education therein at the time of the preparing of their annual budget, to prepare a separate budget of the amount of money that will be required to be raised by taxation, for the support and maintenance of such separate schools, including the amount necessary to purchase sites and to erect school buildings for such separate schools for the coming fiscal year, and it shall thereupon be the duty of the county excise boards in such counties to levy a tax on all taxable property in their respective counties sufficient to pay the cost of supporting and maintaining such separate schools and purchasing sites and erecting school buildings for such separate schools as shown by such budget, and which said tax shall be published, levied and collected in the same manner as other taxes for county purposes, and when collected shall be paid over to the respective treasurers of the board of education in such districts, to be expended upon the order of such board of education for the purpose for which same was levied and collected. No white child shall attend a colored school or a colored child attend a white school."

And section 10567, Compiled Oklahoma Statutes, 1921, reads as follows:

"The public schools of the state of Oklahoma shall be organized and maintained upon a complete plan of separation between the white and colored races, with impartial facilities for both races."

The plaintiff in error, being a municipal corporation, is bound by all the limitations of such corporation, and has only such powers as are specifically granted by the Legislature, together with the reasonable inferences to be drawn from such grants of power.

It is the law that in relation to the schools of this state, the funds raised for the support and maintenance of the separate schools shall not be intermingled. The separate school fund is a county tax fund, levied upon all the taxable property in the county, and the same is not a liability upon a city of the first class. School District No. 76, et al. v. Capital Nat. Bank, 7 Okla. 45, 54 Pac. 309.

Counsel for plaintiff in error contend that the parties at the time of making the contract did not contemplate nor intend that it should include compensation for collection of the separate county tax for the separate schools. We cannot view with approval the contention of counsel, for the reason that the parties construed their contract by payment of a portion of the fee, a fortiori, if the contract is ambiguous or subject to varied construction. There is an absence of

proof parol as to the intention of the parties as expressed in the written contract.

Section 5741, Compiled Oklahoma Statutes, 1921, provides as follows:

"It shall be the duty of the county attorney to appear in the district, superior, and county courts of his county and prosecute and defend, on behalf of the state or county, all actions or proceedings, civil or criminal, in which the state or county is interested or a party. * * *"

It is then the duty of the county attorney to appear, not as counsel for the school board, but as attorney in behalf of Oklahoma county in the civil tax suits filed against the county treasurer wherein a county fund is being jeopardized. The Legislature defined the duties of the county attorney, and, as defined, the county attorney is solely responsible for the county's legal business in the defense of tax suits brought against the county treasurer involving county funds.

A municipal corporation has power and authority to employ an attorney, when necessary, in the absence of express restriction, and this authority is implied from the power to make contracts, to own property and incur liabilities, but, of course, such power is limited to the employment of such attorney to the interest of the corporation, and a school board, occupying a dual capacity, representing primarily the school district of the majority and secondarily the county separate school of the independent district—contracting to pay a fee for a service to be rendered for the benefit of the separate school fund—would act, to that extent, ultra vires, for where the law makes it the duty of an officer to attend to all the legal business of a municipality, it is not lawful to employ another for the same purpose.

In the case of Board of County Com'rs of Logan County v. Jones, 4 Okla. 341, 51 Pac. 565, the court said:

"By these statutes the Legislature has made ample provision for an attorney for both the county, and, in fact, each and every county, and the territory. It is the duty of the county attorney to perform all legal services for the county and territory within his county, and in cases in which the territory or county is interested which have been taken from his county on change of venue. It is the duty of the Attorney General to prosecute and defend all cases, civil and criminal, in the Supreme Court, where the territory is interested as a party.

"The Legislature has given to the county commissioners no authority whatever to employ any other attorney than the one who is employed by law to represent the public

interests, and a contract made for such purpose is ultra vires and void."

This was the territorial court speaking, but the statutes upon which the case is based are the same, in substance. See, also, Treeman v. City of Perry, 11 Okla. 66, 65 Pac. 923; 1 Black on Municipal Corporations, 658.

The defendant in error is chargeable with knowledge of the limitation of the plaintiff in error in contracting concerning the separate county tax.

In City of Tulsa v. Malloy et al., 104 Okla. 281, 231 Pac. 256, it is said:

"Whoever deals with a municipality does so with notice of the limitations on it, or its agents' powers. All are presumed to know the law, and those who contract with it or furnish it supplies do so with reference to the law, and if they go beyond the limitations imposed, they do so at their peril."

We are of the opinion that the act of the school board of Oklahoma City district in contracting to pay out funds of the said district to the defendant in error for his assistance in the collection of taxes belonging to the separate school was ultra vires and void, and the amount of $4,310.32, as alleged to be overpaid, should be deducted from whatever amount was due plaintiff in error. Likewise this item includes $1,291.08, being 25 per cent. of the $5,164.33, of separate school funds included in this judgment.

It is next contended that defendant in error is not entitled to recover on any part of the taxes involved which had previously been legally apportioned and paid over to the treasurer of the plaintiff in error.

The sum of $78,873.54, in tax money here involved, was shown to have been paid under protest; $28,616.85 of said sum was paid over to the school treasurer by the county treasurer before the date of the contract in controversy, which amount, with that thereafter so apportioned, amounted to the sum of $56,157.79, paid over by the county treasurer to the school treasurer before judgment was rendered in any of the tax suits. It is the contention that because this portion of the taxes paid was apportioned by the county treasurer, such portion of tax money was no longer involved in the tax cases, and that the defendant in error in defending such cases did not effect a saving of school money to that extent. It is argued that the county treasurer exercised a discretion in apportioning the tax money notwithstanding the protest, and that his act must be presumed to be legal and binding, so that the money so collected and apportioned was by his said act saved to the school board and the efforts of defendant in error in successfully defending the tax suit availed nothing to the interest of the school board.

Section 9971, Compiled Oklahoma Statutes, 1921, contemplates that a person paying taxes, who desires, shall give notice to the officer collecting the tax, showing grounds of complaint and that suit will be brought against the officer for the recovery of the same within 30 days. It was not contemplated that the protest should be in any particular form or that it shall meet the requirements of a petition in court. We have examined the protest in the case-made and find it sufficient. Oklahoma News Co. v. Ryan, 101 Okla. 152, 224 Pac. 969. When such a protest is filed, it is the ministerial duty of the county treasurer to hold the money so paid. He has no discretion in the matter. He pays the protested money over at his and his bondsmen's peril. He cannot, by so paying over the funds, defeat a tax suit against the county and the particular municipal subdivision for whose benefit the taxes are collected, and when taxes are paid in solido under protest to the county treasurer, the money is received in trust by the county, either for the refund to the taxpayer or for the proper fund to which it respectively belonged.

"The pendency of a suit is always sufficient notice of the matter involved in such suit, at least to the parties to the litigation, and those who claim under them." Arnold v. Smith, 80 Ind. 417; Dubois v. Board of Com'rs of Lake County (Ind. App.) 37 N. E. 1056.

This being true, then the school district, claiming an interest in the tax funds by the county collected, could not profit by the county treasurer disbursing the funds and his refusal to recognize the protest of the taxpayers. Therefore, notwithstanding the apportionment, a judgment may have gone against the county, and the school district would have been lost as a party in interest. So we conclude that the school district profited by the defense of the tax suits, regardless of the physical location of the particular tax money. Hence we conclude there was no merit in this defense.

The judgment, as modified, will be affirmed.

NICHOLSON, C. J., and HARRISON, PHELPS, and HUNT, JJ., concur. BRANSON, V. C. J., concurs, but is of the opinion that the judgment should be affirmed in whole. MASON, LESTER, CLARK, and RILEY, JJ., dissent.

RILEY, J. (dissenting). We cannot agree with the majority opinion. As we view the case, the sole question necessary for the determination of the appeal is whether or not the contract involved in the action is ultra vires and void. The consideration of this question necessarily involves a discussion of powers expressed and implied of municipal corporations and the method by which and extent to which they may expend public funds by contract. This question was presented to the lower court by demurrer to plaintiff's petition and by specific allegations in the defendant's answer, and here by plaintiff in error's first assignment of error.

It will not be denied but that under section 10406, Compiled Oklahoma Statutes, 1921, the defendant, board of education, possessed the usual powers of corporations for public purposes, and as such may sue or be sued, and to contract. Such specific grants of power imply the further power to employ an attorney on behalf of such board in the proper cases, by contract. Ex parte Jones, 4 Okla. Cr. 74, 109 Pac. 570.

In Board of Education of Guthrie v. Excise Board, 86 Okla. 24, 206 Pac. 517, this court held that a board of education may mandamus the excise board to make a levy for separate school purposes. It is there implied that such is a proper case for the employment of an attorney. The action was in the name of the school district, and the statutes make no specific provisions for an attorney to represent the school district in such cases.

The defendant school board herein was not a party to the tax suits, mentioned in the contract sued on in this action. School districts of this state have no duty to perform in the enforcement of tax collections for any purpose, and in suits for taxes paid under protest school districts are not necessary parties; in fact, the school district was not made a party to the actions mentioned in the contract, but contracted only for assistance to the regularly constituted authority, the county attorney, and the eminent counsel representing the school board in this capacity will not be heard to say that said board was an interested and consequently a necessary party to the said tax suits, nor that it was not the duty of the county attorney to defend such suits.

Section 9971, Compiled Statutes, 1921, provides that a suit by a taxpayer to resist the payment of a tax shall be brought against the county treasurer. Section 5741, Compiled Oklahoma Statutes, 1921, provides it shall be the duty of the county attorney to defend, on behalf of the state and county, all actions or proceedings, civil or criminal, in which the state or county is interested or is a party. Expressio unius est exclusio alterius.

The court, in Thatcher and Stephens v. Commissioners of Jefferson County, 13 Kan. 182, uses the following language:

"In many cases the county is by law constituted the general agent or guardian for the protection of the rights and interests of townships and of other subdivisions of the county, and may prosecute or defend therefor."

The Legislature having provided that the county attorney shall defend tax suits brought against the county treasurer, and the Legislature having failed to provide for an attorney to represent school boards, we are of the opinion that no necessity existed for the employment of the defendant in error herein, it being a well-established rule in the interpretation of a law, contract, or will, when certain persons or things are specified, an intention to exclude all others from its operation may be inferred.

The Supreme Court of Kansas in Clough v. Hart, 8 Kan. 487, in discussing a similar case, said:

"A board has no power to employ counsel where there is no necessity, because attorneys employed by the municipality are available."

And in the body of the opinion these words are used:

"The county and city of Leavenworth attempt by these contracts, to employ the plaintiffs to perform precisely what is the duty, under the law, of the county and city attorneys, respectively, to perform. They completely ignore the law."

In Smith v. City of Scranton, 2 Penn. C. C. Rep. 331, it is said:

"Public officers, in the performance of public duties, must avail themselves of such means as the law has provided; and, while such means exist, there can be no necessity to imply others."

The court, in the case of The People of New York ex rel. French v. Byron J. Town, Receiver of Taxes, 1 App. Div. 127, 37 N. Y. S. 64, held:

"Even if the right to employ counsel would ordinarily be inferred as a power incident to the duty of bringing suit to protect public funds, yet when it appears that other provisions are made by the charter for the employment of such counsel, such inference vanishes. The necessity being removed the incidental power would cease."

Beach on Municipal Corporations, vol. 1, page 58, says:

"And where the law has provided an officer whose duty it is to attend to all the legal business of a county, it has been held that the county cannot employ counsel."

In Field v. City of Shawnee, 7 Okla. 73, 54 Pac. 318, this court held that a contract which was not in furtherance of any purpose for which the defendant corporation was created, nor within the general scope of its powers, was ultra vires and void, and that no recovery could be had thereon.

This court held in Board of Com'rs of Comanche Co. v. Fain, 66 Okla. 13, 166 Pac. 836, that a district court appointing an attorney to represent the state in a criminal case appealed to the Criminal Court of Appeals was void to that extent, for the reason that such duty was imposed upon the Attorney General by law.

This court in City of Purcell v. Wadlington, 43 Okla. 728, 144 Pac. 380, involving a case similar to the one under consideration, announced the following syllabus:

"Where the defendant municipal corporation entered into a contract with the plaintiff to appear as an attorney before the Corporation Commission and resist an application of a telephone company to raise its rates, held, in a suit against the municipality to recover thereon a reasonable attorney's fee, that said contract was not authorized by Wilson's Rev. & Ann. St. 1903, sec. 347 (Rev. Laws 1910, sec. 541), as necessary to the good government of the city and as an exercise of its corporate powers; and, not being in furtherance of any purpose for which the municipality was created, nor within the general scope of its powers, the same was ultra vires and void."

And said:

"When a corporation is created by a public statute for definite and limited objects to which its funds are to be applied, a contract, which is entirely unconnected with those purposes, or which on its face will cause an illegal or wrongful application of the funds, or an application to other objects, is ultra vires and void."

From the foregoing, we must conclude that the contract sued on herein was ultra vires and void, for the reason that the statutes gave no power to the school board to make the contract sued on. To be sure, the statutes gave the board of education power to make all contracts and do all other acts in relation and pertaining to the ordinary affairs of the school district necessary to the management of its affairs and statutory purposes and the exercise of its corporate and administrative powers, but this contract is not such as is within the contemplation of the statute. This for the reason that the subject-matter of the contract was not one in which the board of education had any official or statutory concern.

The county attorney is counsel for the county, and the statute expressly requires him to defend tax suits. The employment of a general attorney for the defense of tax suits for the territory embraced within a county and the municipal subdivisions thereof is not by the law put in the hands of a school board or the officers of other municipal subdivisions, but is put in the hands of the people themselves. The county attorney derives his authority from as high a source as does the school board, and it is about as reasonable to say that the county attorney could employ another board of education to transact or supplement the ordinary business of the school district, as performed by said board, as it is to say that said board can employ another attorney to transact or supplement the legal duties placed upon the county attorney by statute. Both would be absurd.

In our judgment the Legislature wrought well when in their wisdom they enacted specific statutes imposing exact duties upon particular officers in representing such municipal corporations in the defense of such actions, and thus preventing the deflection of great sums of money raised by the public tax from a purpose such as the payment of useless salaries and attorney's fees, other than for which such public money was levied and raised.

Where a school board has no direct interest in the question involved in a case, it seems clear that it cannot assume the defense of the suit or appropriate its money for the payment of the expenses incurred. "It would be a dangerous power," as stated in Halstead v. Mayor of N. Y., 3 N. Y. 430, "to be vested in municipal corporations, which would give them the right to employ counsel and defend every suit which might present a question in the decision of which the agents of such corporations might fancy themselves interested."

It is urged that, because the school district would eventually receive a portion of the moneys collected if successful in said tax suits, the school district would have such an interest as would authorize the board to employ counsel. We see no merit in this contention. If this were true, the school board could virtually take over the duties of the county assessor and of a tax ferret by employing persons to perform the duties re-

quired of such officers by statute under the guise of being interested, if additional property were placed on the tax rolls.

We are, therefore, of the opinion that the act of the school board in contracting with the defendant in error, for the purpose of rendering a service wherein the statute has already provided an official whose duty it is to perform such a service, is ultra vires and void, and that the trial court erred in overruling the defendant's demurrer to the petition and in failing to dismiss plaintiff's case.

MASON, LESTER, and CLARK, JJ., concur.