OKLAHOMA STATE MEDICAL ASSOCIATION v. CORBETT



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:OKLAHOMA STATE MEDICAL ASSOCIATION v. CORBETT

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 OKLAHOMA STATE MEDICAL ASSOCIATION v. CORBETT
2021 OK 30
Case Number: 119357
Decided: 06/01/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 30, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

THE OKLAHOMA STATE MEDICAL ASSOCIATION; OKLAHOMA DENTAL ASSOCIATION; THE OKLAHOMA OSTEOPATHIC ASSOCIATION; THE OKLAHOMA SOCIETY OF ANESTHESIOLOGISTS, INC; and OKLAHOMA CHAPTER AMERICAN ACADEMY OF PEDIATRICS, INC., Petitioners,
v.
KEVIN CORBETT, in his capacity as CHIEF EXECUTIVE OFFICER of the OKLAHOMA HEALTH CARE AUTHORITY and THE STATE OF OKLAHOMA ex rel. OKLAHOMA HEALTH CARE AUTHORITY, Respondents.

ORIGINAL PROCEEDING FOR DECLARATORY RELIEF 
AND WRIT OF PROHIBITION AND/OR MANDAMUS

¶0 The Petitioners brought this action seeking declaratory relief and a writ of prohibition and/or mandamus asserting the Respondents lacked the proper legislative authority to implement a new managed care program. The Court assumes original jurisdiction and grants declaratory relief. Writs denied.

ORIGINAL JURISDICTION ASSUMED;
DECLARATORY RELIEF GRANTED;
WRITS DENIED

John D. Stiner, Stiner Law Firm, PLLC, Oklahoma City, Oklahoma and Anthony W. Sykes, Duncan, Oklahoma, for Petitioners

Robert G. McCampbell, Jay P. Walters, and Mary Hope Forsyth, GableGotwals, Oklahoma City and Tulsa, Oklahoma, for Respondents.

COMBS, J.:

¶1 The Petitioners, the Oklahoma State Medical Association, Oklahoma Dental Association, the Oklahoma Osteopathic Association, the Oklahoma Society of Anesthesiologists, Inc., and Oklahoma Chapter American Academy of Pediatrics, Inc., ask this Court to assume original jurisdiction to declare the actions of the Respondents, Kevin Corbett, CEO of the Oklahoma Health Care Authority and the State of Oklahoma ex rel. the Oklahoma Health Care Authority (OHCA), to implement a new managed care program known as SoonerSelect has not been statutorily authorized and that such actions are therefore ultra vires. In the alternative, if this Court finds statutory authorization exists, Petitioners seek a declaration that the Respondents have violated the non-delegation doctrine. Petitioners also ask this Court to invalidate the Respondents' actions, including the request for proposal (RFP) and contract awards, because the Respondents failed to promulgate administrative rules to govern their implementation in violation of 75 O.S. 2011, § 302(D) and (E). Finally, the Petitioners assert the SoonerSelect program will require mandatory enrollment in violation of article II, Section 37(B) of the Oklahoma Constitution. The Petitioners request this Court issue a writ of prohibition barring the Respondents from implementing SoonerSelect until such time as the Oklahoma Legislature has conferred the necessary authority. In the alternative, if the Court finds such authority already exists in statute, then Petitioners request this Court issue a writ of mandamus requiring the Respondents to promulgate administrative rules governing the SoonerSelect program prior to further implementation of the program.

¶2 The Court invokes its publici juris doctrine to assume original jurisdiction here as Petitioners have presented this Court with an issue of public interest in urgent need of judicial determination.[1] Treat v. Stitt, 2021 OK 3, ¶1, 481 P.3d 240, 241; Fent v. Contingency Review Bd., 2007 OK 27, ¶11, 163 P.3d 512, 521. The Court grants declaratory relief but denies any requests for a writ. Having determined the Respondents do not have authority under the law to proceed and implement the SoonerSelect program, there is no need to issue a writ of mandamus to require rule promulgation to further such program, and a writ of prohibition is not appropriate in this matter.[2] This matter was assigned to this office on February 11, 2021.

I. Facts 

¶3 The federal Medicaid program was created in 1965, when Congress added Title XIX to the Social Security Act (the Act), codified in 42 U.S.C. §§ 1396 et seq., for the purpose of providing federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. Harris v. McRae, 448 U.S. 297, 301 (1980). Although participation in the Medicaid program is entirely optional, once a state elects to participate, it must comply with the requirements of Title XIX. Id. The State of Oklahoma chose to participate in the Medicaid program. See 1995 OK AG 62, ¶1, 25 Op. Att'y Gen. 165, 166. The program provides a cooperative cost-sharing structure in which the federal government reimburses the state a portion of the costs for providing medical services to eligible individuals. Id. Participating states must submit a "state Medicaid plan" for federal approval. Id. ¶2, 25 Op. Att'y Gen. at 166. Although the federal law requirements are mandatory on participating states, the Act provides a "waiver" mechanism, to waive such requirements in certain circumstances. Id. ¶3, 25 Op. Att'y Gen. at 166. Title 42 U.S.C. §1315, for example, vests broad powers in the Secretary of the U.S. Department of Health and Human Services (Secretary of HHS) to waive compliance with many federal requirements related to state Medicaid plans in regards to cases of "any experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the objectives of [the public assistance titles of the Act]." 42 U.S.C.A. § 1315(a) (West Supp. 2020). This type of waiver is referred to as a "1115(a)" waiver, which is named after the section where it is found in the Act. There are several other types of waivers, including the "freedom of choice" waiver in 42 U.S.C. § 1396n(b), which is also known as a "1915(b)" waiver because of where it is found in the Act.

¶4 Up until the early 1990s, Oklahoma's Medicaid State Plan operated on a "fee-for-service" reimbursement program, i.e., the individuals or entities providing services submitted claims directly to the state for payment. 1995 OK AG 62, ¶1, 25 Op. Att'y Gen. at 166 (citing 42 C.F.R. §430.0 (1994)). From 1988 to 1992, the number of Oklahoman's receiving Medicaid assistance increased by forty-seven percent (47.0%), with the associated cost rising from $580 million to more than $1 billion.[3] Around the same time, the federal government imposed limitations on healthcare provider tax revenue that states could use to help finance Medicaid. This created serious pressures on the State's budget which led to reductions in rates and services to compensate for the growth. To avoid dramatic cuts in services and eligible populations, health care reform was placed near the top of the agenda by the Governor and the Legislature. Two committees were created from 1992 through 1993 to study access and cost-containment problems within Oklahoma's existing Medicaid system. The committees' recommendations were the basis for the enactment of two bills in 1993.

¶5 House Bill 1573[4] and Senate Bill 76[5] were enacted in 1993. HB 1573 created the "Oklahoma Health Care Authority Act" (OHCA Act, 63 O.S. §§ 5003--5016)[6] and SB 76 created the "Oklahoma Medicaid Healthcare Options Act" (OMHOA, 56 O.S. §§ 1010.1--1010.7).[7] The OMHOA established the Oklahoma Medicaid Healthcare Options System (System).[8] It provided that on or after July 1, 1993, "there shall be a state entity designated by law to assume responsibility for preparation for converting the present system of delivery of the Oklahoma Medicaid Program to a managed care system."[9] The newly created System "shall use both full and partial capitation models to service the medical needs of eligible persons, provided that prepaid capitation health plans shall be the only managed care model offered in the metropolitan statistical areas of Oklahoma City and Tulsa."[10] The OHCA Act created the Oklahoma Health Care Authority (OHCA) to be the state entity "to assume the responsibilities for the preparation and development for converting the present delivery of the state's Medicaid program to a managed care system," on and after July 1, 1993.[11] On and after January 1, 1995, the OHCA became "the designated state agency for the administration of the State Medicaid Program."[12] The OHCA Act also granted OHCA the power and duty to "[p]urchase health care benefits for . . . Medicaid recipients . . . as specifically authorized by law."[13] 

¶6 The OMHOA provided specific timelines for the System to develop managed care plans for eligible people:

C. The System shall develop managed care plans for all persons eligible for Title XIX of the federal Social Security Act, 42 U.S.C., Section 1396 et seq., as follows:

1. On or before July 1, 1995, managed care plans shall be developed for a minimum of fifty percent (50%) of the participants in the Aid to Families with Dependent Children (AFDC) program and participants categorized as noninstitutionalized medically needy. On or before July 1, 1996, all participants in the Aid to Families with Dependent Children (AFDC) program and participants categorized as noninstitutionalized medically needy shall be enrolled in a managed care plan;

2. On or before July 1, 1997,[14] managed care plans shall be developed for all participants categorized as aged, blind or disabled; and

3. On or before July 1, 1999, managed care plans shall be developed for all participants who are institutionalized or who are seriously and persistently mentally ill.

56 O.S. Supp. 1994, §1010.3 (C).[15] Subsection D of §1010.3 provided specific authorization for the OHCA to apply "for any federal Medicaid waivers necessary to implement the System."[16] Section 1010.3 has been amended several times over the years, with the last amendment being made in 2000.[17]

¶7 A thorough reading of 56 O.S. Supp. 1993, § 1010.3 and 63 O.S. Supp. 1993, § 5009 shows the focus of the two Acts was to "transition"[18] the operation of the Oklahoma Medicaid program, to "convert"[19] the then present system of delivery (fee-for-service) to a managed care program, and to "implement"[20] that new system with the pursuit of necessary waivers. By the mid 1990s, this was accomplished. Within 1995 and 1996, the OHCA developed and implemented two distinct managed care delivery systems within the Medicaid program: SoonerCare Plus and SoonerCare Choice.[21] The OHCA Act and OMHOA emphasized full and partial capitated models.[22] SoonerCare Plus was the fully capitated model and was implemented on July 1, 1995, after receiving approval of its 1915(b) waiver application. Under this plan, the OHCA contracted with managed care organizations (MCOs) which were health maintenance organizations (HMOs). This plan provided services to eligible persons residing in the major urban centers and the counties immediately surrounding them. This was in line with 56 O.S. Supp. 1993, §1010.3 (A)(3)'s specific requirement that "prepaid capitated health plans shall be the only managed care model offered in the metropolitan statistical areas of Oklahoma City and Tulsa." On October 1, 1996, the OHCA was able to implement SoonerCare Choice, the partially capitated model for the remainder of the State, after it received approval of its 1115(a) waiver application. This partially capitated plan paid providers a monthly capitated rate for a fixed set of services, with noncapitated services compensable on a fee-for-service basis. It was created as a primary care provider case management program, where the state contracted directly with primary care providers throughout the state to provide basic health care services.

¶8 By 2003, the SoonerCare plans had grown to more than 330,760 members due to the Legislature's mandate to expand Medicaid eligibility and the inclusion of the aged, blind and disabled populations. However, at this time, one of the HMOs active in SoonerCare Plus decided to pull out of the State's Medicaid program. The resulting effect would have left some members in some parts of the state with an insufficient choice of health care providers. Therefore, the OHCA Board decided to end all of its HMO contracts as of December 31, 2003, and to switch all members to the other managed care system, SoonerCare Choice. SoonerCare Plus members were temporarily transferred into an enhanced fee-for-service program, and thereafter fully transferred to SoonerCare Choice by April 1, 2004. SoonerCare Plus was effectively terminated almost 18 years ago, and SoonerCare Choice continued thereafter.

¶9 On June 30, 2020, the people of Oklahoma voted to approve State Question Number 802, Initiative Petition Number 419 (SQ 802). SQ 802 added four sections to a newly created article XXV-A of the Oklahoma Constitution. It defined "Low Income Adults" as persons over the age of 18 and under age 65 whose income does not exceed one-hundred thirty-three percent (133%) of the federal poverty level (Expansion Adult Group).[23] It required the State to provide medical assistance under the Oklahoma Medicaid program to Low Income Adults and to include them as a coverage group beginning no later than July 1, 2021.[24] It further required the OHCA to submit a State Plan Amendment and all other necessary documents to seek required approvals from the Centers for Medicare and Medicaid Services (CMS) within ninety days of approval of the new Article.[25]

¶10 SQ 802 mandated the expansion of Medicaid coverage for certain Oklahomans by no later than July 1, 2021. On July 16, 2020, approximately two weeks after SQ 802 was approved, the OHCA issued a request for information to solicit input and recommendations on the design of Request for Proposals (RFP) to implement a new managed care program, SoonerSelect.[26] After receiving input, the OHCA began implementation of its design by first issuing RFPs on October 15, 2020. One RFP is for the entering into comprehensive risk-based contracts with multiple MCOs to provide healthcare services to Medicaid enrollees in the proposed SoonerSelect plan. The RFP also seeks to implement a SoonerSelect Specialty Children's Plan. Another RFP, issued the same day, concerned dental benefits for the anticipated SoonerSelect Dental Program. The MCOs under the SoonerSelect plan will be paid a capitated amount for each enrollee which will represent payment in full for all services furnished under the contract.[27] Its membership will include not only the projected 175,623 persons in the Expansion Adult Group but also another 566,757 persons representing children, deemed newborns, pregnant women, and parent and caretaker relatives.[28] The SoonerSelect Specialty Children's Plan will include approximately 31,414 persons representing former foster children, juvenile justice involved, foster care, and children receiving adoption assistance.[29] The proposed system affects a huge portion of the State's population as well as its budget. Approximately 773,000 Oklahomans, which is roughly one-fifth of the State's population, will receive Medicaid services under the proposed SoonerSelect managed care system. The Medicaid program is a substantial part of the State's budget; over $2.4 billion was the State's portion of Medicaid for the 2021 budget.[30]

¶11 The RFPs contained model contracts. These contracts were competitively bid.[31] On January 26, 2021, the OHCA selected four MCOs out of the seven who bid to provide SoonerSelect services.[32] One of the successful bidders is Blue Cross and Blue Shield of Oklahoma, which is the State's oldest and largest private health insurer.[33] On February 17, 2021, the OHCA selected three dental plans to provide SoonerSelect Dental Program benefits.[34] These contracts with the MCOs have been signed but will also have to receive CMS approval.[35] The procurement of these contracts represents one of the largest in the State's history.[36] The RFPs provided that enrollment in the new SoonerSelect plans will begin October 1, 2021.[37] In addition, on or about February 19, 2021, the OHCA applied for necessary waivers with the CMS in order to allow SoonerSelect to proceed.[38]

II. Analysis

¶12 The Petitioners assert that the statutes do not now provide legislative authorization for the OHCA to create a wholly new fully capitated managed care program almost 28 years after the original authorization; but if this Court should find legislative authorization exists, then we should engage in a "robust" non-delegation doctrine examination of these statutes to determine the constitutionality of the Respondents' actions. Oklahoma's non-delegation doctrine is rooted in articles IV and V of the Oklahoma Constitution. Tulsa Cty Deputy Sheriff's Fraternal Order of Police, Lodge No. 188 v. Bd. of Cty Comm'rs, 2000 OK 2, ¶8, 995 P.2d 1124, 1128. Section 1 of article IV provides for the separation of the three branches of government. Section 1 of article V requires that "[t]he Legislative authority of the State shall be vested in a Legislature consisting of a Senate and House of Representatives . . . ." Based on section 1 of article V, it is a well-settled rule that "the legislature must not abdicate its responsibility to resolve fundamental policy making . . . ." City of Oklahoma City v. State ex rel. Dep't of Labor, 1995 OK 107, ¶12, 918 P.2d 26, 29 (quoting Democratic Party v. Estep, 1982 OK 106, ¶16 n.23, 652 P.2d 271, 277 n.23). This prohibition does not forbid the Legislature from delegating power to implement its statutorily-mandated policies. Tulsa, 2000 OK 2, ¶9, 995 P.2d at 1128. Even though the Legislature may not delegate the power to make laws, it can delegate the authority to make rules and regulations in the implementation of statutory enactments. Id. To prevent the Legislature's role from being usurped, its ability to delegate rule-making authority is subject to the condition that the statutory scheme "must establish [the legislative] policies and set out definite standards for the exercise of any agency's rule making power." Id. (alteration in original) (quoting Estep, 1982 OK 106, ¶16, 652 P.2d at 277).

While it is "well settled" in this jurisdiction that the power to determine the policy of the law is primarily legislative and cannot be delegated, the power to make rules of a subordinate character in order to carry out the policy legislatively determined and to apply that policy to varying factual conditions, although sharing the attributes of legislative exercise of power, is in its major sense an administrative duty which may be delegated properly to an administrative body by the Legislature.

City of Sand Springs v. Dep't of Pub. Welfare, 1980 OK 36, ¶7, 608 P.2d 1139, 1144.

¶13 We agree with the Petitioners' assertion that the Legislature has not authorized the creation of the SoonerSelect program. We therefore do not find it necessary here to engage in a thorough examination of the statutes to determine if there was a non-delegation doctrine violation. The OHCA has not even promulgated any rules governing SoonerSelect for us to review in order to weigh such a determination. This matter can be decided upon the relevant statutes and the history behind their creation.

¶14 We find no express grant of legislative authority to create the SoonerSelect program nor do we find the extant statutes implicitly authorize its creation. When interpreting statutes, the intent of the Legislature controls, and to ascertain the legislative intent, all statutory provisions upon a particular subject will be considered and given effect as a whole. Indep. Sch. Dist. No. 89 v. Okla. City Fed'n of Teachers, Local 2309, 1980 OK 89, ¶11, 612 P.2d 719, 721. A review of the OHCA Act and OMHOA demonstrate the Legislature did not intend to give carte blanche authority to the OHCA to create managed care plans. The 1993 Acts were created to address a problem.[39] The purpose was to "convert[]" the then "present delivery of the state's Medicaid program to a managed care system." 63 O.S. Supp. 1993, § 5009(A). The OHCA Act provided that "the system shall emphasize managed care principles, including a capitated, prepaid system with either full or partial capitation . . . ." Id. This was accomplished in 1995 and 1996 by the creation of SoonerCare Plus and SoonerCare Choice. The OMHOA further set timelines for the creation of the managed care plans and specific authorization for a waiver to implement the System.[40] It provided that the OHCA shall create managed care plans for "all persons eligible for Title XIX of the federal Social Security Act . . . as follows," then provided the timelines for that to occur.[41] The waiver application provision in subsection D of § 1010.3 also provided it was for implementing the System and the federal funds procured thereby would be used to provide services for eligible persons.[42] In 1995, a contemporaneous opinion of the Oklahoma Attorney General noted that the "OHCA has specific State statutory authority to apply for waivers pursuant to federal and statutory law to transform the present Medicaid program." 1995 OK AG 62, ¶16, 25 Op. Att'y Gen. at 169 (emphasis added).

¶15 The Respondents assert the Legislature has granted broad authority to the OHCA which would allow it to create SoonerSelect. They cite to the provisions of 63 O.S. 2011, § 5006(A)(1), (2) and (10), which grants the OHCA "the power and duty to: (1) Purchase health care benefits for Medicaid recipients . . . . ; (2) Enter into contracts for the delivery of state-purchased health care and establish standards and criteria which must be met by entities eligible to contract with the Authority for the delivery of state-purchased health care . . . . ; and (10) Exercise all incidental powers which are necessary and proper to carry out the purposes of the Oklahoma Health Care Authority Act."[43] This language, however, was part of the original 1993 language in 63 O.S. Supp. 1993, § 5006, and still remains today.[44] The Respondents fail to mention that paragraph (A)(1) actually states that the OHCA shall have the power and duty to "[p]urchase health care benefits for . . . Medicaid recipients . . . as specifically authorized by law." 63 O.S. 2011, § 5006(A)(1) (emphasis added).[45] The purchase of Medicaid benefits would still need to be specifically authorized by law. Once the purchase of health care benefits for Medicaid recipients is specifically authorized by law, then the OHCA has the power and duty to enter into contracts for the delivery of that state purchased health care.

¶16 There is further evidence to refute the existence of a broad delegation of power by the Legislature. Over the years, the Legislature has amended the OMHOA and OHCA Act to provide specific authorizations for the OHCA to engage in certain activity---e.g., to apply for waivers; to develop certain plans, including a managed care pilot program; and to engage in RFPs and requests for information. In 1997, after SoonerCare Plus and SoonerCare Choice were already implemented, the Legislature amended 56 O.S. § 1010.3 (C) and specifically authorized the OHCA to make a "proposal for a Medicaid waiver to implement a managed care pilot program for participants with long-term care needs."[46] It further provided that "in no instance shall the waiver application be presented to the Health Care Financing Administration[47] prior to review by the [Joint Legislative Oversight] Committee."[48] In 2003, the Legislature specifically authorized the OHCA to apply for any necessary waivers with CMS to accomplish certain goals which included "the purchase of health care coverage using 'buy-in' arrangements for small employers and/or voucher arrangements for employer-sponsored insurance purchasing."[49] The following year, this same section was amended to authorize the OHCA to "develop and implement a pilot premium assistance plan to assist small businesses and/or eligible employees to purchase employer-sponsored insurance or 'buy-in' to a state sponsored benefit plan."[50] In 2015, 63 O.S. Supp. 2015, §5028 was enacted, which specifically authorized the OHCA to "initiate requests for proposals for care coordination models for aged, blind and disabled persons."[51] Two years later, the Legislature specifically authorized the OHCA to "initiate a request for information for care coordination models for newborns through children eighteen (18) years of age in the custody of the Department of Human Services."[52] The above examples contain specific grants of legislative authority which would be unnecessary if the OHCA already had the broad authority to submit waivers, RFPs and requests for information and to create managed care plans, at will.[53]

¶17 Further, the new sections of the constitution created by SQ 802 also did not authorize a new managed care program. Section 2 of article XXV-A of the Oklahoma Constitution provides in pertinent part:

A. In addition to those otherwise eligible for medical assistance under Oklahoma's Medicaid program, the State shall provide medical assistance under Oklahoma's Medicaid program to Low Income Adults.

Section of 3 of artice XXV-A, further provides:

A. Within 90 days of approval of this Article, the Oklahoma Health Care Authority shall submit a State Plan Amendment and all other necessary documents to seek required approvals from the Centers for Medicare and Medicaid Services to include Low Income Adults as a coverage group in Oklahoma's Medicaid program beginning no later than July 1, 2021.

These sections authorize a waiver to allow Low Income Adults to be included as a coverage group in Oklahoma's Medicaid program in order to provide such persons medical assistance under the program. They do not provide authority for the creation of a new managed care program.

¶18 In Treat v. Stitt, 2021 OK 3, 481 P.3d 240, the Governor entered into new tribal gaming compacts outside of the relevant statutory authority which required such compacts be within the bounds of the Model Tribal Gaming Compact or obtained through approval of the Joint Committee on State-Tribal Relations. Id. ¶3, 481 P.3d at 241. We found the Executive branch's action in entering into these new compacts disrupted the balance between the Executive and Legislative branches. Id. ¶12, 481 P.3d at 244. Our holding invalidated the compacts. Id. In Justice Kauger's concurring opinion, she wrote:

While the Governor's role may be faithful execution of the law, which he exceeded, nowhere in the Oklahoma Constitution is the Governor given the autonomous, broad authority to negotiate, execute, and bind the state to completed gaming compacts which are unauthorized by statute. Rather, art. 6, §8 clearly requires the Governor to act as may be prescribed by law. Any authority the Governor might have concerning gaming compacts, must be expressly prescribed by the Legislature. The Legislature neither expressly nor implicitly granted the Governor the power beyond negotiation.

Id., ¶8, 481 P.3d at 247-48 (Kauger, J., with whom Combs & Gurich, JJ., join concurring); see also Treat v. Stitt, 2020 OK 64, ¶8, 473 P.3d 43, 45 (holding certain tribal compacts were invalid because the Governor had exceeded his authority in entering into those compacts); Bd. of Educ. of Okla. City v. Thurman, 1926 OK 34, ¶35, 247 P. 996, 1000 (a school board's making of a contract with a private attorney for representation was held to be ultra vires and void when the law only allowed representation by the county attorney). From a review of the OHCA Act and the OMHOA, we find no express or implied legislative authority for the OHCA to implement a wholly new managed care program such as SoonerSelect. We find the actions of the OHCA to implement SoonerSelect by entering into RFPs and awarding contracts was not authorized by the Legislature and is ultra vires. We hold the resulting contracts are invalid.

¶19 Even if legislative authority could be found to support the OHCA's actions, the RFP process and resulting contracts should be invalidated. The Petitioners assert the OHCA has not promulgated any rules prior to implementing the SoonerSelect program. They assert that, at the very least, the OHCA was required by law to have promulgated rules governing competitive bidding prior to implementation through the RFP process and the awarding of contracts. This alone, they argue, violated the Administrative Procedures Act (APA) and should invalidate the entire process already begun. We agree.

¶20 The OHCA is required to comply with Article I of the APA.[54] Under both the OHCA Act and OMHOA the OHCA is specifically required to promulgate rules establishing appropriate competitive bidding criteria and procedures for contracts awarded pursuant to the Medicaid program.[55] As mentioned, in 1993 the OHCA Act and OMHOA were enacted and they authorized the managed care plans that became SoonerCare Plus (1995) and SoonerCare Choice (1996). In 1995, emergency rules were made for these plans and an 1115 (a) waiver application was also made.[56] Included in these emergency rules were thirteen rules under a subchapter heading entitled "Health Plan Competitive Bid Requirements." These rules were found in §§ 317:25-1-1 through 25-1-13 of the Oklahoma Administrative Code. The headings of these rules indicate the corresponding subjects as follows:

Subchapter 1. Health Plan Competitive Bid Requirements

317:25-1-1. Purpose
317:25-1-2. Definitions
317:25-1-3. General Purchasing Provisions
317:25-1-4. Health Plan Registration
317:25-1-5. Health Plan Retention and Removal from Bidder List
317:25-1-6. Submission of Bids
317:25-1-7. Soonercare Bid Openings
317:25-1-8. Award of Bid
317:25-1-9. Best and Final Offer (BFO) or Additional Negotiation Processes
317:25-1-10. Terms and Conditions for Acceptable Bids
317:25-1-11. Challenge of Award
317:25-1-12. Administrative Review
317:25-1-13. Confidentiality

These rules provided detailed provisions for competitive bidding as required by the OHCA Act and the OMHOA. All of these rules were revoked effective June 25, 2004, following the termination of the SoonerCare Plus program.[57]

¶21 Without rules promulgated for competitive bidding or any part of the proposed SoonerSelect managed care program, the OHCA began its implementation by engaging in RFPs and awarding contracts with selected MCOs. The provisions governing the competitive bidding process are found in the RFPs and attached model contracts, not in any promulgated rules.[58] Title 75 § 302(D and E) of the Oklahoma Statutes provides:

D. An agency shall not by internal policy, memorandum, or other form of action not otherwise authorized by the Administrative Procedures Act:

1. amend, interpret, implement, or repeal a statute or a rule;

2. expand upon or limit a statute or a rule; and

3. except as authorized by the Constitution of the United States, the Oklahoma Constitution or a statute, expand or limit a right guaranteed by the Constitution of the United States, the Oklahoma Constitution, a statute, or a rule.

E. Any agency memorandum, internal policy, or other form of action violative of this section or the spirit thereof is null, void, and unenforceable.

Here, the OHCA has implemented the competitive bidding process through the RFPs and model contracts rather than by promulgating rules specifically on the subject as required by law. We hold these actions are in violation of the APA and render the RFP process and resulting contracts null, void, and unenforceable.

III. Conclusion

¶22 Following the passage of SQ 802, the OHCA began implementation of a wholly new capitated managed care program. The provisions of SQ 802 in no way authorize this course of action. The OHCA, through an RFP process and competitive bidding, awarded contracts to MCOs without legislative authorization or required rules in place. In effect, the OHCA moved ahead without the required legislative authorization. This Court assumes original jurisdiction and grants declaratory relief to the Petitioners. We find the actions of the OHCA are invalid under Oklahoma law. Having determined the Respondents did not have legislative authority to implement the SoonerSelect program, there is no need to issue a writ of mandamus for OHCA to promulgate any rules. A writ of prohibition is also not appropriate in this matter.[59] In addition, having determined declaratory judgment in favor of the Petitioners, we need not address whether the provisions proposed in the RFPs and model contracts are unconstitutional in and of themselves. See State ex rel. Fent v. State ex rel. Okla. Water Res. Bd., 2003 OK 29, ¶ 12, 66 P.3d 432, 439.

ORIGINAL JURISDICTION ASSUMED;
DECLARATORY RELIEF GRANTED;
WRITS DENIED

¶23 Darby, C.J., Kauger, Edmondson, and Combs, JJ.; Reif, S.J. and Goree, S.J., concur;

¶24 Kane, V.C.J., Winchester and Rowe, JJ., dissent;

Winchester, J., dissenting 

The Legislature passed Senate Bill 131 entitled "Ensuring Access to Medicaid Act," which recognizes a managed care model. Senate Bill 131 resolves the legal question for the Oklahoma Health Care Authority to move forward. I would therefore deny Petitioners' Application to Assume Original Jurisdiction. For this reason, I dissent.

Rowe, J., with whom Kane, V.C.J., joins, dissenting

I would issue show cause as to why this matter should not proceed as moot in light of S.B. 131.

¶26 Gurich, J., disqualified.

FOOTNOTES

[1] In Edmonson v. Pearce, we determined that, when this Court has concurrent jurisdiction with the district courts it is within our discretion to assume original jurisdiction. 2004 OK 23, ¶10, 91 P.3d 605, 613. It is a rare case that will be entertained on original jurisdiction that requests declaratory relief. Id. ¶11, 91 P.3d at 614. However, this Court has assumed original jurisdiction in such cases: 1) when the matter concerns the public interest, i.e., the case is publici juris in nature, which essentially means affecting the people or community at large; and 2) there must be some urgency or pressing need for an early decision. Id., 91 P.3d at 613.

[2] In Umholtz v. City of Tulsa, 1977 OK 98, ¶6, 565 P.2d 15, 18, this Court held:

A writ of prohibition is an extraordinary remedy which is generally inappropriate unless three elements are present - these elements are:

1. A court, officer, or person has or is about to exercise judicial or quasi-judicial power.
2. The exercise of that power is unauthorized by law.
3. And the exercise of that power will result in injury for which there is no other adequate remedy.

"Quasi-judicial power" for purposes of the first test has been defined as: "a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of [a] judicial nature." Id. ¶9, 565 P.2d at 18 (quoting Thompson v. Amis, 493 P.2d 1259 (Kan. 1972)). This matter does not concern an administrative board or officer's use of judicial or quasi-judicial power, and therefore a writ of prohibition is not appropriate here.

[3] Oklahoma Health Care Authority, A History in Brief (September 2005), Resp'ts' App., Tab 11. Many of the facts presented in the following paragraphs are taken from this document.

[4] 1993 Okla.Sess.Laws, c. 332.

[5] 1993 Okla.Sess.Laws, c. 336.

[6] Currently, the OHCA Act is found at 63 O.S. §§ 5003--5029.

[7] The OMHOA was amended in 2003 and retitled the "Oklahoma Medicaid Program Reform Act of 2003," (2003 Okla.Sess.Laws c. 464; SB 610). For purposes of this opinion, we will refer to it as the OMHOA. The current version of the Act is found at 56 O.S. §§ 1010.1--1010.13.

[8] 56 O.S. Supp. 1993, § 1010.3(A)(1).

[9] Id. (emphasis added).

[10] Id. § 1010.3(A)(3). The OMHOA defined "prepaid capitated" as a "mode of payment by which a health care provider directly delivers health care services for the duration of a contract to a maximum specified number of members based on a fixed rate per member, regardless of the actual number of members who receive care from the provider or the amount of health care services provided to any member." Id. § 1010.2(A)(7).

[11] 63 O.S. Supp. 1993, § 5009 (emphasis added).

[12] Id.

[13] Id. § 5006(A)(1) (emphasis added).

[14] The original implementation date of July 1, 1997, for this category of persons was later amended by the Legislature to July 1, 1999. 1997 Okla.Sess.Laws, c. 377, §1.

[15] The 1993 version of § 1010.3(C) is essentially the same as the 1994 version, but the 1994 version added "managed care plans shall be developed for" language to each of the three paragraphs.

[16] 56 O.S. Supp. 1995, § 1010.3(D) (emphasis added). The 1993 version of § 1010.3 referred to the Department of Human Services as the one responsible for applying for Medicaid waivers. This was amended in 1995 to replace the reference with the OHCA. 1995 Okla.Sess.Laws, c. 204, §3.

[17] 2000 Okla.Sess.Laws, c. 383; SB 1506.

[18] 56 O.S. Supp. 1993, § 1010.3(B) (emphasis added):

On or before July 1, 1993, the Oklahoma Medicaid Healthcare Options System shall initiate a process to provide for the orderly transition of the operation of the Oklahoma Medicaid Program to a managed care program within the System.

Title 63 O.S. Supp. 1993, § 5009(B)(3) (emphasis added):

The Department of Human Services and the Authority shall jointly prepare a transition plan for the transfer of the administration of the state Medicaid program to the Authority. The transition plan shall include provision for the retraining and reassignment of employees of the Department of Human Services affected by said transfer. The transition plan shall be submitted to the Governor, the President Pro Tempore of the Senate and the Speaker of the House of Representatives on or before January 1, 1994.

[19] Title 56 O.S. Supp. 1993, § 1010.3(A)(1) (emphasis added):

On and after July 1, 1993, there shall be a state entity designated by law to assume responsibility for preparations for converting the present system of delivery of the Oklahoma Medicaid Program to a managed care system.

Title 63 O.S. Supp. 1993, § 5009(A) (emphasis added):

On and after July 1, 1993, the Oklahoma Health Care Authority shall be the state entity designated by law to assume the responsibilities for the preparation and development for converting the present delivery of the state's Medicaid program to a managed care system.

[20] 56 O.S. Supp. 1993, § 1010.3(D) (emphasis added): "The [OHCA (1995 amendment changed it to OHCA from Department of Human Services)] shall apply for any and all federal Medicaid waivers necessary to implement the System."

[21] See A History in Brief, supra note 3.

[22] 56 O.S. Supp. 1993, § 1010.3(A)(3) provided:

The System shall use both full and partial capitation models to service the medical needs of eligible persons, provided that prepaid capitated health plans shall be the only managed care model offered in the metropolitan statistical areas of Oklahoma City and Tulsa.

63 O.S. Supp. 1993, § 5009(A) provided in pertinent part:

The system shall emphasize managed care principles, including a capitated, prepaid system with either full or partial capitation, the use of primary care physicians to establish the appropriate type of medical care a Medicaid recipient should receive and an emphasis on preventative care.

[23] Okla. Const. art. 25-A, § 1(B).

[24] Id. §§ 2-3.

[25] Id. §3.

[26] SoonerSelect Request for Proposals (Solicitation Number 8070001240) § 1.4, Pet'rs' App. vol. I, at page 0025.

[27] Model Contract § 1.2, Pet'rs' App. vol. I, at page 0123.

[28] SoonerCare 1115 Amendment Request, Resp'ts' App., Tab 6, at page 10.

[29] The SoonerSelect plan will cover most enrollees but not all, e.g., individuals determined eligible for Medicaid on the basis of age, blindness or disability will not get health care through SoonerSelect. Model Contract § 1.4.5, Pet'rs' App. vol. I, at page 0136.

[30] Resp'ts' Resp. to Pet'rs' AAOJ 2.

[31] OHCA Press Release (January 29, 2021), Pet'rs' App., vol. IV, at page 0694.

[32] Resp'ts' Resp. to Pet'rs' Pet. 2.

[33] OHCA Press Release, supra note 31, at pages 0694-695.

[34] Resp'ts' Resp. to Pet'rs' Pet. 2.

[35] Id.; Model Contract § 1.1.4. supra note 27, at page 0106. The Respondents plan to submit the contracts for CMS approval in June 2021. See Resp'ts' Resp. to AAOJ 4.

[36] See OHCA Press Release, supra note 31, at page 0694.

[37] SoonerSelect Request for Proposals § 1.2, supra note 26, at page 0024.

[38] See Resp'ts' Resp. to AAOJ 2; Resp'ts' Resp. to Pet'rs' Pet. 3; OHCA SoonerCare 1115(a) Research & Demonstration Waiver Amendment Request (Feb. 19, 2021), Resp'ts' App., Tab 6.

[39] See supra ¶4.

[40] 56 O.S. Supp. 1994, § 1010.3(C) (emphasis added) provided:

C. The System shall develop managed care plans for all persons eligible for Title XIX of the federal Social Security Act, 42 U.S.C., Section 1396 et seq., as follows:

1. On or before July 1, 1995, managed care plans shall be developed for a minimum of fifty percent (50%) of the participants in the Aid to Families with Dependent Children (AFDC) program and participants categorized as noninstitutionalized medically needy. On or before July 1, 1996, all participants in the Aid to Families with Dependent Children (AFDC) program and participants categorized as noninstitutionalized medically needy shall be enrolled in a managed care plan;

2. On or before July 1, 1997, managed care plans shall be developed for all participants categorized as aged, blind or disabled; and

3. On or before July 1, 1999, managed care plans shall be developed for all participants who are institutionalized or who are seriously and persistently mentally ill.

D. The designated state Medicaid agency shall apply for any and all federal Medicaid waivers necessary to implement the System. The application made pursuant to this subsection shall be designed to qualify for federal funding primarily on a prepaid capitated basis. Such funds may only be used for eye care, dental care, medical care and related services for eligible persons.

[41] Id.

[42] Id. § 1010.3(D).

[43] Resp'ts' Resp. to Pet'rs' Pet. 3-4.

[44] 63 O.S. 2011, § 5006, was last amended in 1999.

[45] This language was also in the 1993 version of § 5006(A)(1).

[46] 56 O.S. Supp. 1997, § 1010.3(C)(4). The date was later amended in 1999 to July 1, 2000. 1999 Okla.Sess.Laws c. 348, §4.

[47] The Health Care Finance Administration was renamed the Centers for Medicare and Medicaid Services in July 2001. Federal Register, https://www.federalregister.gov/agencies/health-care-finance-administration (last visited Apr. 28, 2021).

[48] § 1010.3(C)(4).

[49] 56 O.S. Supp. 2003, § 1010.1(D)(1)(c); 2003 Okla.Sess.Laws c. 464, §1.

[50] 56 O.S. Supp. 2004, § 1010.1(D)(3); 2004 Okla.Sess.Laws c. 136, §1.

[51] 2015 Okla.Sess.Laws c. 244, §1.

[52] 63 O.S. Supp. 2017, § 5028.1(A); 2017 Okla.Sess.Laws c. 208, §1.

[53] The dissenters note the enactment of the "Ensuring Access to Medicaid Act," Senate Bill 131, First Regular Session of the Fifty-eighth Legislature of the State of Oklahoma (2021). The Act is not part of the record in this case. We take judicial notice of the enactment of Senate Bill 131. This Act was enacted on May 27, 2021 without the signature of the Governor pursuant to Article VI, Section 11, of the Oklahoma Constitution. It will take effect on September 1, 2021. The Act appears to justify this Court's conclusions that legislative authorization is necessary for the OHCA to shift towards a capitated managed-care plan and the OHCA needs to promulgate rules before implementing the Act. Among other things, the Act provides specific legislative authorization for the OHCA to require certain enrollment in a capitated managed care delivery model using MCOs and dental benefit managers, with some exceptions. It sets out standards and requirements to be met by MCOs and dental benefit managers. The Act further specifically requires the OHCA to promulgate rules to implement the Act as well as to seek any necessary federal approval.

[54] See 75 O.S. Supp. 2020, § 250.4(A)(19) which provides that the OHCA need not comply with Article II of the APA. Article I of the APA is composed of §§ 250--308.3 of title 75. In addition, 63 O.S. Supp. 2020, § 5007(F) provides: "The Board and the Authority [i.e., OHCA] shall act in accordance with the provisions of . . . the Administrative Procedures Act."

[55] 56 O.S. 2011, § 1010.4(G):

G. The Oklahoma Health Care Authority Board shall promulgate rules:

1. Establishing appropriate competitive bidding criteria and procedures for contracts awarded pursuant to the Oklahoma Medicaid Program Reform Act of 2003 [formerly named OMHOA];

63 O.S. Supp. 2020, §5008 (B)(5):

B. The Administrator of the Oklahoma Health Care Authority shall be the chief executive officer of the Authority and shall act for the Authority in all matters except as may be otherwise provided by law. The powers and duties of the Administrator shall include but not be limited to:

. . .

5. Establishment of a contract bidding process which:

a. encourages competition among entities contracting with the Authority for state-purchased and state-subsidized health care; provided, however, the Authority may make patient volume adjustments to any managed care plan whose prime contractor is a state-sponsored, nationally accredited medical school. The Authority may also make education or research supplemental payments to state-sponsored, nationally accredited medical schools based on the level of participation in any managed care plan by managed care plan participants,

b. coincides with the state budgetary process, and

c. specifies conditions for awarding contracts to any insuring entity.

[56] 1115(a) Demonstration Protocol (September 30, 1995), Resp'ts' App., Tab 14.

[57] 21 Okla. Reg. 2149, 2149-50 (June 15, 2004).

[58] Pet'rs' Reply Br. 14.

[59] See supra note 2.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions
 Cite
Name
Level

 1995 OK AG 62, Question Submitted by: The Honorable Ed Crocker, Oklahoma House of Representatives, District 45
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1995 OK 107, 918 P.2d 26, 66 OBJ 3184, City of Oklahoma City v. State ex rel. Oklahoma Dept. of Labor
Discussed
 2003 OK 29, 66 P.3d 432, STATE ex rel. FENT v. STATE ex rel. OKLAHOMA WATER RESOURCES BOARD
Discussed
 2004 OK 23, 91 P.3d 605, EDMONDSON v. PEARCE
Discussed
 2007 OK 27, 163 P.3d 512, FENT v. CONTINGENCY REVIEW BOARD
Discussed
 1980 OK 36, 608 P.2d 1139, City of Sand Springs v. Department of Public Welfare
Discussed
 1977 OK 98, 565 P.2d 15, UMHOLTZ v. CITY OF TULSA
Discussed
 1980 OK 89, 612 P.2d 719, Independent School Dist. No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309 of American Federation of Teachers
Discussed
 2020 OK 64, 473 P.3d 43, TREAT v. STITT
Discussed
 2021 OK 3, 481 P.3d 240, TREAT v. STITT
Discussed at Length
 2000 OK 2, 995 P.2d 1124, 71 OBJ 111, Tulsa Co. F.O.P., Lodge No. 188 v. Board of County Commissioners of Tulsa Co.
Discussed at Length
 1926 OK 34, 247 P. 996, 121 Okla. 108, BOARD OF ED. OF OKLAHOMA CITY v. THURMAN
Discussed
 1982 OK 106, 652 P.2d 271, Democratic Party of Oklahoma v. Estep
Discussed at Length
Title 56. Poor Persons
 Cite
Name
Level

 56 O.S. 1010.1, Short Title - Purpose - Mediaid Coverage - Waivers - Health Employee and Economy Improvement Act (HEEIA) Revolving Fund
Discussed at Length
 56 O.S. 1010.3, Establishment of Oklahoma Medicaid Healthcare Options System - Administration - Development of Managed Care Plans - Applications for Federal Medicaid Waivers
Discussed at Length
 56 O.S. 1010.4, Implementation of System
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 5003, Policy of State to Provide Comprehensive Health Care - Purpose of Oklahoma Health Care Authority
Discussed
 63 O.S. 5006, Creation of Oklahoma Health Care Authority - Powers and Duties
Discussed at Length
 63 O.S. 5007, Creation of Oklahoma Health Care Authority Board - Members - Powers and Duties
Cited
 63 O.S. 5008, Administrator of Oklahoma Health Care Authority - Advisory Committees
Cited
 63 O.S. 5009, Authority - Assumption of Responsibilities - Managed Care System - Administration of Oklahoma Medicaid Program
Discussed at Length
 63 O.S. 5028, Request for Proposals for Care Coordination Models for Aged, Blind and Disabled Persons
Cited
 63 O.S. 5028.1, Request for Proposals for Care Coordination Models for Newborns Through Children Age 18
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 250.4, Compliance with Act - Exceptions
Cited
 75 O.S. 302, Promulgation of Certain Rules - Public Inspection of Rules, Orders, Decisions and Opinions - Rulemaking Record - Prohibited Actions - Violations
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA